IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DR. YEVGENIY A. KONTAR,

                Plaintiff,             Case No. 3:15 CV 425

    -vs-

                                          MEMORANDUM   OPINION

AMERICAN GEOPHYSICAL UNION,
et al.,

                Defendants.

KATZ, J,

Defendant Christine McEntee has filed a renewed motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (Doc. No. 53). Plaintiff Dr. Yevgeniy Kontar has filed a response (Doc. No. 58), and Ms. McEntee has filed a reply. (Doc. No. 61).

Defendant American Geophysical Union (AGU) and Ms. McEntee have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 57). Dr. Kontar has filed a response (Doc. No. 62), and the Defendants have filed a reply. (Doc. No. 63). Dr. Kontar has filed a sur-reply. (Doc. No. 66).

I.  Personal Jurisdiction Standard

To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a plaintiff must prove that jurisdiction is proper over each individual defendant. *SFS Check, LLC v. First Bank of Del.*, 774 F.2d 351, 355–56 (6th Cir. 2014). When, as here, a district court allows discovery on the motion, the district court should consider the facts offered by both parties and rule according to the preponderance of the evidence. *Id.* at 356; *Serras v. First Tenn.*

*Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). A federal court may only exercise jurisdiction over a party in a diversity-of-citizenship case when such jurisdiction is both authorized by state law and permitted by the Due Process Clause of the Fourteenth Amendment. *SFS Check*, 774 F.3d at 556. As this is a diversity case, whether this Court has personal jurisdiction over Ms. McEntee depends upon whether an Ohio state court would have jurisdiction. *See Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 678 (6th Cir. 2012).

In assessing whether Dr. Kontar has carried his burden of proof, the Court must conduct the state long-arm and federal constitutional inquiries separately because Ohio's long-arm statute, Ohio Rev. Code § 2307.382, does not extend to the federal constitutional limits of the Due Process Clause. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994)).

The first issue is whether Ms. McEntee is within the reach of Ohio's long-arm statute. Ohio Rev. Code § 2307.382 provides, in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: . . .
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Regarding the second question of whether the exercise of personal jurisdiction over a defendant would comport with federal due process, the Sixth Circuit has developed a three-part test for this issue. "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (internal quotation marks and citation omitted). "Second, the cause of action

2

must arise from the defendant's activities there." *Id*. "Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id*.

Purposeful availment happens when the defendant personally takes actions that create a "substantial connection" with the forum state such that he or she can "reasonably anticipate being haled into court there." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)).

## II. Discussion Regarding Personal Jurisdiction

To support her motion to dismiss, Ms. McEntee states that she is not a resident, nor has she ever been a resident of Ohio. She does not have any interest in any real property in this state. She does not maintain a bank account, have employees, advertise, solicit business, or have business interests in Ohio.

In order to support his position that the Court has jurisdiction over Ms. McEntee, Dr. Kontar refers to the fact that Ms. McEntee's attorneys removed his state court action to this Court on March 5, 2015. (Doc. No. 1; Doc. No. 58, p. 3, ¶ 5). However, as Ms. McEntee notes, she was not a party to the litigation at the time of removal because she was not a named party to the action until Dr. Kontar filed his first amended complaint on June 14, 2015. (Doc. No. 13).

Dr. Kontar also states that Ms. McEntee has employed a law firm from Cleveland, Ohio to represent her in this action. (Doc. No. 58, p. 3, ¶ 8). However, because Dr. Kontar filed a cause of action against Ms. McEntee, she was required to have a licensed attorney from Ohio to represent her in this action. These "contacts" which Dr. Kontar relies upon would never have occurred had Ms. McEntee not been named a party to this action.

3

Dr. Kontar also refers to an article Ms. McEntee wrote for a book which was published in 2014 and edited at the University of Findlay, in Findlay, Ohio. He further refers to a speech which Ms. McEntee made in Ohio while CEO of the American Institute of Architects nearly eight years ago. (Doc. No. 58, pp. 5–6, ¶¶ 13, 16; Doc. No. 61–1, p. 1). Ms. McEntee's actions must have a substantial connection with Ohio so this Court's exercise of jurisdiction over Ms. McEntee would be reasonable. *Bird*, 289 F.3d at 874. These isolated events are far from satisfying this standard.

What troubles the Court, and why it finds that it has jurisdiction over Ms. McEntee, involves Dr. Kontar's claims that Ms. McEntee was the individual who instigated the action which Dr. Kontar asserts to be defamatory. Ms. McEntee is allegedly the individual who solicited the letter from the Restaurant Nora which formed the basis of the AGU's ethic's investigation against Dr. Kontar. As a result of the investigation, Dr. Kontar alleges he has suffered negative consequences in Ohio.

Ms. McEntee contends Dr. Kontar's affidavits are self-serving. The documents admittedly contain statements which are self-serving and inadmissible. However, despite these flaws, the affidavits do allege sufficient facts which would satisfy the requirements of § 2307.382(A)(6). Therefore, the Court finds that Dr. Kontar has provided sufficient evidence to establish that this Court has personal jurisdiction over Ms. McEntee.

Ms. McEntee also argues that the fiduciary shield doctrine bars personal jurisdiction over her as her actions were conducted in her official capacity as the Executive Director and Chief Executive Officer of the AGU. The fiduciary shield doctrine is formulated as follows: "if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the

4

corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 697 (6th Cir. 2000) (internal quotation marks and citation omitted). In this form, the fiduciary shield doctrine prevents the exercise of personal jurisdiction whenever an out-of-state officer's contacts occur by virtue of his official capacity. *Id*.

In *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974), the court stated that jurisdiction over a corporate officer cannot be predicated merely upon jurisdiction over the corporation. The *Balance* court noted that some district courts in the Sixth Circuit have held that the mere fact that an out-of-state defendant performed the alleged tortious or violative conduct while acting as a corporate agent precludes the exercise of personal jurisdiction over that person. *Balance Dynamics*, 204 F.3d at 297 (citations omitted). Other district courts, however, have found that the exercise of jurisdiction over the agent depends on the extent of that agent's personal involvement in the conduct. *Id*. (citations omitted). These courts exercised personal jurisdiction over the corporate officers where the officers were active participants in the tortious conduct. *Id*. The *Balance* court acknowledged that there is support for this approach in Sixth Circuit case law. *Id*. at 697–98 (citations omitted).

The *Balance* court stated that "[w]hile it is true that 'jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation,' we hold that the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity *does not* preclude the exercise of personal jurisdiction over those defendants." *Id*. at 698 (quoting *Weller*, 504 F.2d at 929) (emphasis added). Thus, "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim,

the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether she purposely availed herself of the forum and the reasonably foreseeable consequences of that availment." *Id*. (citations omitted).

Thus, contrary to Ms. McEntee's contention, the fiduciary shield doctrine does not bar personal jurisdiction over her simply because her actions were performed in her official capacity as an officer of AGU. *Id*. Dr. Kontar contends, and Ms. McEntee concedes, that she was involved in the investigation regarding Dr. Kontar's alleged ethic violations. Even though Ms. McEntee may have been acting in her official capacity during the investigation, this alone does not deprive the Court of personal jurisdiction over her. *Id*. As the Court has personal jurisdiction over Ms. McEntee based upon her conduct regarding the charges and ethics investigation against Dr. Kontar, the Court finds that its jurisdiction over Ms. McEntee is not defeated by the fiduciary shield doctrine. *Id*. Accordingly, Ms. McEntee's motion to dismiss Dr. Kontar's complaint pursuant to Rule 12(b)(2) is denied.

### III.  Summary Judgment Standard

AGU and Ms. McEntee have both moved for summary judgment asserting that Dr. Kontar's complaint is barred by the applicable statute of limitations.

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A court views the facts in the

record and reasonable inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A court does not weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted). If the moving party satisfies this burden, the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Rule 56 and *Matsushita,* 475 U.S. at 586). The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence which is "merely colorable" or "not significantly probative" is insufficient. *Anderson,* 477 U.S. at 248–52.

IV. Discussion

AGU and Ms. McEntee assert that Dr. Kontar's defamation, libel, and slander action is barred by the applicable one-year statute of limitations. In the alternative, AGU and Ms. McEntee argue that Dr. Kontar cannot establish that an unprivileged publication satisfies the prima facie elements of a defamation claim.

Ohio has a one-year statute of limitations for a defamation, libel, and slander action under Ohio Rev. Code § 2305.11(A). *Vodila v. Clelland*, 836 F.2d 231, 234 (6th Cir. 1987). Under

Ohio law, the statute of limitations begins to run on the date the defamatory remarks are first spoken or published, not on the date the aggrieved party learns of the remarks. *Lewis v. Del. Cnty. Joint Vocational Sch. Dist.*, 829 N.E.2d 697, 700 (Ohio Ct. App. 2005); *Lyons v. Farmers Ins. Grp. of Cos.*, 587 N.E.2d 362, 363–64 (Ohio Ct. App. 1990); *Rainey v. Shaffer*, 456 N.E.2d 1328, 1330 (Ohio Ct. App. 1983); *see also Friedler v. Equitable Life Assurance Soc'y of U. S.*, 86 F. App'x 50, 53 (6th Cir. 2003). Further, Ohio courts have refused to apply a continuing defamation rule which would allow subsequent statements to reset the statute of limitations. *Frieder*, 86 F. App'x at 54–55.

In his response to the Defendants' motion to dismiss, Dr. Kontar claims that his cause of action accrued when the AGU Ethics Committee published its *Allegation of Misconduct: AGU Leader Code of Conduct Violation* on March 4, 2014, which, according to Dr. Kontar, was sent to the AGU Board of Directors in early April 2014. (Doc. No. 62, p. 11). Dr. Kontar's states that therefore, less than one year had passed after the publication and distribution of the document and the filing of his lawsuit on February 3, 2015. (Doc. No. 62, p. 11).

Dr. Kontar's position is contrary to Ohio law. The important and definitive inquiry is not when the defamatory statements were published in the report, but rather when the defamatory statements were originally made. *Id*. The statements and accusations which form the basis of Dr. Kontar's defamation action were made long before the publication of the report. Further, Dr. Kontar's own admissions establish that he was aware of the statements and threatened legal action months prior to the publication of the report.

The allegedly false statements which Dr. Kontar's case is based upon are: 1) he was intoxicated at the September 10, 2013 AGU dinner meeting; and 2) he inappropriately touched a

8

server at the same meeting. (Doc. No. 57–3, Y. Kontar Dep. at 75–76).

Dr. Kontar was well aware of these allegedly defamatory statements before December 18, 2013, when he received a letter from AGU stating that the AGU Ethics Committee was conducting an internal investigation based on allegations of "public intoxication" and "aggressive behavior, including inappropriate contact towards a restaurant female server." (Doc. No. 57–3, Y. Kontar Dep. at 94-96; Doc. No. 54–2, p.127, Kontar Dep. Ex. GG). On December 20, 2013, Dr. Kontar filed a discrimination charge with the D.C. Office of Human Rights in which he stated, under penalty of perjury, that he had received letters from AGU on October 10 and 30, 2013, alleging that he violated AGU's policies by inappropriately touching a server at an AGU dinner. (Doc. No. 57–3, Y. Kontar Dep. at 88-89; Doc. No. 54–2, p. 118, Kontar Dep. Exhibit BB).

In a letter dated January 1, 2014, Dr. Kontar acknowledged receipt of three separate letters informing him of the allegations of unethical behavior involving his conduct at the September 10, 2013 AGU dinner. (Doc. No. 57–3, Y. Kontar Dep. at 96; Doc. No. 54–2, p. 129, Kontar Dep. Ex. HH). Dr. Kontar stated in this letter, "[a]t this point it appears that it may be necessary to begin legal action against AGU for defamation of character and continued unnecessary psychological and emotional harassment . . . ." (Doc. No. 54–2, p. 131, Kontar Dep. Ex. HH).

On January 16, 2014, in a letter to Dr. Carol Finn, Dr. Kontar stated, "[t]he escalation of the alleged incident at a private dinner has been excessive and amounts to an abuse of power for the purpose of harassment. It may become a legal matter (defamation of character) and I wanted you to understand my position." (Doc. No. 57–3, Y.. Kontar Dep. at 100; Doc. No. 54–2, p. 134,

9

Kontar Dep. Ex. KK). In another letter dated January 22, 2014, addressed to Dr. Tim Grove, Chair of the AGU Ethics Committee, Plaintiff stated, "[t]here are some other important defamation issues, but following the legal advice I will not bring them to this interview." (Doc. No. 54–2, p. 138, Kontar Dep. Ex. NN).

In an email to Dr. Grove dated January 28, 2014, Dr. Kontar stated, "[t]he psychological and emotional damage intended by this allegation has already been inflicted on me for several months now. . . . As Chair of the AGU Ethics Committee it is your duty to defend AGU members against false, trumped-up charges which result in defamation." (Doc. No. 54–2, p. 139, Kontar Dep. Ex. OO). Dr. Kontar's own evidence establishes that the statements upon which he bases his defamation action were made in October 2013. Under Ohio law, this means that the statute of limitations for Dr. Kontar's defamation, libel, and slander claims expired in October 2014. The statute of limitations had most definitely expired by February 3, 2015, when Dr. Kontar filed his cause of action.

Dr. Kontar's letters to AGU establish that, as early as January 1, 2014, he was contemplating legal action based on the statements made in October 2013. Yet, he waited until February 3, 2015, to file the instant action against AGU. (Doc. No. 1–1; Doc. No. 57–3, Y. Kontar Dep. at 76). Dr. Kontar's claims of defamation, libel, and slander against AGU are barred by Ohio's one-year statute of limitations and must be dismissed. Ohio Rev. Code § 2305.11(A); *Frieder*, 86 F. App'x at 54–55.

Dr. Kontar's allegations of defamation, libel, and slander against Ms. McEntee are also barred by Ohio's one-year statute of limitations. The internal memorandum, which serves as the basis for Dr. Kontar's claims against Ms. McEntee, is dated January 13, 2014. (Doc. No. 57–2,

p. 31). Thus, the filing deadline for claims of defamation, libel, and slander stemming from this statement expired on January 13, 2015. (Doc. No. 57–2, pp. 2–4). Dr. Kontar was in possession of Ms. McEntee's statement as early as January 22, 2014. (Doc. No. 57–3 Y. Kontar Dep. at 107; Doc. No. 54–2, p. 138 Kontar Dep. Ex. NN). However, Dr. Kontar did not file his cause of action against Ms. McEntee until June 14, 2015. (Doc. No. 13). Therefore, Dr. Kontar's complaint against Ms. McEntee is also barred by Ohio's one-year statute of limitations. Ohio Rev. Code § 2305.11(A); *Frieder*, 86 F. App'x at 54–55.

## V. Conclusion

Accordingly, Ms. McEntee's motion to dismiss the case for lack of personal jurisdiction pursuant to Rule 12(b)(2) is denied. (Doc. No. 53).

AGU's and Ms. McEntee's motion for summary judgment pursuant to Rule 56 is granted. (Doc. No. 57).

IT IS SO ORDERED.

    s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE